UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SAMUEL UCHENNA ANIUKWU | No. 20 CR 352<br><br>Susan E. Cox<br>Magistrate Judge |

### GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SET BOND AND CONDITIONS OF RELEASE

The UNITED STATES OF AMERICA, through JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, respectfully submits this response to defendant Samuel Uchenna Aniukwu's motion to set bond and conditions of release (ECF 22). Defendant has not identified a suitable third-party custodian and his proposed conditions of release would not abate his serious flight risk and danger to the community. For the below reasons, those articulated in the report of Pretrial Services, and those set forth in the government's original memorandum in support of detention (ECF 21), defendant should remain detained pending trial in this matter.

**DEFENDANT HAS NOT IDENTIFIED A SUITABLE THIRD-PARTY CUSTODIAN**

In his motion, defendant proposes Ubi O'Neal, an Illinois attorney, to serve as his third-party custodian. There are several reasons why Mr. O'Neal is not suitable for this role.

First, at the time of their arrests in this case, both defendant and co-defendant Ibekie identified Mr. O'Neal as their lawyer. If Mr. O'Neal plans to represent either individual in this matter, his third-party custodianship of defendant would inevitably raise conflict-of-interest issues. Mr. O'Neal has also been retained as counsel for both

defendant and Ibekie in the past. He represented Ibekie in a DuPage County criminal case, where Ibekie was indicted for possession of a counterfeit automobile registration in or around 2017.[1] Further, Mr. O'Neal's name appears on the last page of a putative lease agreement filed in support of defendant's application for permanent residency. (*See* Ex. 17, attached hereto.) As detailed further in the government's detention brief, that application—ultimately rejected by USCIS—was based upon defendant's sham marriage to Lasheena Washington.[2] The foregoing lease purports that defendant and Washington were co-defendant Ibekie's tenants at the Lincoln Premises.

Second, documents and records seized from defendant's and Ibekie's residences pursuant to search warrants appear to show that Mr. O'Neal is involved with African Money Union, one of the many entities under investigation in this case. For instance, a promotional flier seized from defendant's home lists Mr. O'Neal (with an alternate spelling of his surname) as a legal consultant to African Money Union. (*See* Ex. 18.) And a letter seized from Ibekie's home was addressed to "Ub O'Neil," notifying him that he has been nominated as a potential member of the board of directors for African Money Union. The substantive content of this letter was identical, or nearly identical, to a letter that Ibekie emailed Aniukwu in or around June 2017. (*See* Complaint, Ex. 2 ("Mansker Affidavit") ¶ 119.)

---

[1] From discussions with DuPage County authorities, it appears Ibekie was convicted in that matter, but then granted a new trial based on a court's finding that Mr. O'Neal provided ineffective assistance of counsel.

[2] Defendant's motion does not offer his putative wife, Washington, as a potential third-party custodian, an omission that is—itself—telling. According to Pretrial Services' interview with defendant, he claims that he and Washington have experienced "marital issues."

2

Third, while Mr. O'Neal is a licensed Illinois attorney, he has been subject to disciplinary proceedings. In or around 1999, Mr. O'Neal was censured by the Illinois Attorney Registration and Disciplinary Commission for: (1) making unauthorized *ex parte* contact with a represented party; and (2) directing an individual to fraudulently endorse a settlement check so that Mr. O'Neal could be paid. (*See* Ex. 19.)

Fourth, the report of Pretrial Services (which recommends detention) shows a recurring theme. Mr. O'Neal was not able to verify any of defendant's personal history other than the country of defendant's birth. He did not know the status of defendant's marriage to Ms. Washington, any of defendant's residential addresses, or defendant's employment and educational history. Defendant's claim that Mr. O'Neal—who hardly knows anything about defendant's background—would "ensure that [defendant] will abide by all court orders and conditions" is simply not credible.

The foregoing facts together establish that Mr. O'Neal is not a suitable third-party custodian in this matter.

**DEFENDANT HAS NOT IDENTIFIED SUITABLE CONDITIONS OF RELEASE**

While defendant proposes, among other conditions, being placed on location monitoring, surrendering passports, or forfeiting his access to Internet-connected devices, the government has extensively addressed why such conditions would not be effective in its original detention memorandum. Notably, Pretrial Services—based on its own investigation—finds that defendant is not amenable to pretrial supervision, principally because of his flight risk.

Defendant also proposes a $5,000 bond posted by Mr. O'Neal (who told Pretrial Services that he has no current income due to the COVID-19 pandemic). Such a sum

3

would be inadequate to mitigate defendant's serious flight risk, particularly where agents found substantially higher quantities of cash and money orders in defendant's home, to say nothing of his ready access to six-figure troves of fraudulently obtained funds held in different entities' bank accounts in the United States and abroad.[3]

    Simply put, defendant's motion does not address the myriad concerns of flight risk and danger to the community raised in the government's detention brief and the report of Pretrial Services. He does not address his past falsehoods under penalty of perjury, his sham marriage to Washington, or his possession of fraudulent education records, which should collectively lead this Court to seriously doubt any of defendant's assertions or promises of compliance with bond conditions. Defendant correctly notes in his motion that he is presumed innocent. But under the Bail Reform Act, this Court should consider the substantial weight of the evidence against defendant, which only corroborates his serious flight risk and danger to the community if released on bond.

---

[3] For the sake of comparison, co-defendant Gosha—who was granted pretrial release with the government's agreement—posted a $150,000 appearance bond secured by her home. And co-defendant Gosha had well-established ties to the community, unlike defendant, whose principal ties are abroad, in India and Nigeria.

4

**CONCLUSION**

For the reasons set forth above, the government respectfully requests that the Court order defendant detained pending trial.

                                      Respectfully submitted,

                                      JOHN R. LAUSCH, JR.
                                      United States Attorney

By:   *s/ Saurish Appleby-Bhattacharjee*
        Saurish Appleby-Bhattacharjee
        Paige Nutini
        Assistant United States Attorneys
        219 S. Dearborn Street
        Chicago, Illinois 60604
        (312) 469–6045

Dated: July 21, 2020